UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,   Crim. No. 19-130(3) (PAM/HB)

           Plaintiff,

v.   **MEMORANDUM AND ORDER**

Jose Alfredo Penaloza Romero,

           Defendant.

_____

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Steven E. Rau dated October 28, 2019.[1] (Docket No. 122.) In the R&R, Magistrate Judge Rau recommended granting Defendant's Motion to Suppress. The Government filed timely objections to the R&R (Docket No. 129) and Defendant responded to those objections. (Docket No. 139.) The matter is now ripe for this Court's review, which is de novo. 28 U.S.C. § 636(b)(1); D. Minn. L.R. 72.2(b). For the following reasons, the Court declines to adopt the R&R.

**BACKGROUND**

The factual background in this matter is set forth in the thorough R&R and will not be repeated here. Facts necessary to an understanding of the legal discussion will be incorporated into that discussion below.

Defendant Jose Alfredo Penaloza Romero challenges his arrest and the subsequent search of his apartment. The R&R found that the arrest was not supported by probable

---

[1] Sadly, Magistrate Judge Rau died shortly after the R&R issued. The case has been reassigned to Magistrate Judge Hildy Bowbeer. (Docket No. 131.)

cause and that, as a result of that error and other alleged misstatements in the search warrant application, the warrant was also not supported by probable cause. The R&R therefore recommended that Romero's Motion to Suppress the evidence obtained during the search of his apartment be granted.

## DISCUSSION

**A.     Arrest**

To comport with the Fourth Amendment, a warrantless arrest such as that here may be accomplished only "if the officer has probable cause to believe the person has committed a crime." Peterson v. Kopp, 754 F.3d 594, 598 (8th Cir. 2014). That belief must be "particularized with respect to the person to be [arrested]." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citation omitted). "In assessing the question of probable cause in this case, we consider whether the facts and circumstances are sufficient 'to warrant a man of reasonable caution in the belief that' [the defendant] was involved in the commission of a crime." United States v. Chauncey, 420 F.3d 864, 870 (8th Cir. 2005) (quoting Brinegar v. United States, 338 U.S. 160, 175-76 (1949)).

The facts of Chauncey are instructive. In Chauncey, a trooper noticed that the van the defendant was driving had expired tags. Id. at 869. He followed the van into a parking lot and started a conversation with the defendant, who had exited the vehicle. Id. The trooper then approached the car and noticed the female passenger, whom the defendant had identified as the van's owner, behaving suspiciously. Id. He smelled marijuana and seized the passenger's purse, ultimately arresting her for possession of marijuana. Id. He then arrested the defendant. Id.

The defendant argued that probable cause was lacking for the arrest, contending that his mere proximity to his passenger's crime was insufficient to implicate him.  Id. at 871.  The Eighth Circuit found that there was sufficient evidence of a "common enterprise" between the defendant and his passenger to establish the requisite probable cause.  Id.

Here, an unidentified individual directed a confidential source to bring a large amount of methamphetamine to the La Quinta hotel in Bloomington, Minnesota.  The unidentified individual told the source that someone would meet him at the La Quinta.  On April 5, 2019, Romero and his co-Defendant Enrique Becerra arrived at the La Quinta in Romero's vehicle, with Romero driving.  Becerra retrieved a backpack from the back of Romero's vehicle, entered the hotel, and exchanged the backpack for what he thought was the methamphetamine.  Officers arrested Becerra in the hotel and Romero in his car.  The R&R found that law enforcement did not have a particularized reasonable belief to arrest Romero and thus that his arrest violated the Fourth Amendment.  (R&R at 8.)

But as in Chauncey, there was sufficient evidence of a common enterprise between Becerra and Romero here to support Romero's arrest.  Romero had been the target of a law enforcement investigation into a large-scale methamphetamine distribution ring, and when he arrived at the La Quinta, law enforcement knew who he was.  (Tr. (Docket No. 102) at 17.)  The fact that a suspected drug dealer drove another individual to a hotel, where the other individual then attempted to retrieve a large amount of drugs, is sufficient to establish a reasonable officer's belief in a "common enterprise" between the vehicle's occupants.  Romero's arrest was constitutional.

**B.     Search**

The R&R invalidated the search of Romero's apartment for two reasons.  First, the R&R found that, because Romero's arrest was constitutionally infirm, the search of his apartment performed using the keys seized was also unconstitutional.  Second, the R&R determined that the warrant affidavit contained a false statement, or at the least a statement made with reckless disregard for the truth.  (R&R at 11 (citing Franks v. Delaware, 438 U.S. 154, 171 (1978)).)  Having determined that Romero's arrest was constitutional, the Court will address only the second basis for invalidating the warrant.

The warrant application stated that the person who directed the confidential source to deliver the drugs to the Bloomington La Quinta told the source "that a person, later identified as [Becerra] and [Romero] would meet the [source] and take possession of the methamphetamine." (Gov't Ex. 2 at 3.)  The R&R interpreted this statement to imply that law enforcement identified Becerra and Romero before the controlled buy took place.  In reality, neither law enforcement nor the source knew who would be coming to the La Quinta to retrieve the drugs.

But there is another interpretation of this statement.  It is undoubtedly true that, after the controlled buy, law enforcement identified Becerra and Romero.  The warrant affidavit does not say that law enforcement identified Becerra and Romero before the controlled buy. Rather, it states that law enforcement "later" identified Becerra and Romero.  At most, this is an inartful statement of the timing of the identification.

The Government argues that the R&R incorrectly found this statement false without conducting a Franks hearing.  A Franks hearing tests the statements in the warrant, and

would have allowed an in-depth inquiry into this ambiguous statement. As the Government notes, Romero did not request a Franks hearing, and the R&R's determination was therefore made on an entirely paper record.

In the context of this case, the R&R's determination that the statement was false or recklessly misleading is erroneous. As noted, the statement is susceptible of two different interpretations. Faced with this situation, a Franks hearing would have allowed the Magistrate Judge to test the veracity of the claims in the warrant. Failing to conduct such a hearing was erroneous.

But even if the statement could be considered false or misleading on its face, the affidavit as a whole establishes the requisite probable cause for the search. Law enforcement requested the warrant after Becerra implicated Romero in the drug transaction. (Gov't Ex. 2 at 3.) In addition, law enforcement's previous investigation into Romero revealed activity consistent with an illegal drug-distribution conspiracy. (Id. at 2.) The affidavit's factual averments, taken as a whole, establish sufficient probable cause for the warrant to search Romero's apartment, including opening the safe in his apartment.

C.   **Good Faith Exception**

Even if the search warrant was invalid, the good-faith exception allows the admission of the evidence obtained pursuant to the warrant. See United States v. Leon, 468 U.S. 897, 923 (1984). The good-faith exception allows law enforcement to execute a search warrant unless the issuing judge "wholly abandoned [her] judicial role," the application was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," the judge was misled by information the officer "knew

5

was false or would have known was false except for his reckless disregard of the truth," or the warrant was "facially deficient." Id. (quotation omitted).

The Court determined above that the warrant affidavit did not contain a false or reckless misstatement, and that, even without the allegedly false or misleading statement, the affidavit was sufficient to establish probable cause for the warrant. Thus, the affidavit's statements do not preclude the application of Leon's good-faith exception. The issuing judge did not abandon her judicial role, nor was the warrant application lacking in any indicia of probable cause. Finally, the warrant was not facially deficient. The good-faith exception applies, and the evidence obtained pursuant to the search warrant is admissible.

**CONCLUSION**

The Court disagrees with the R&R's conclusion that Romero's arrest and the subsequent search of his apartment violated the Fourth Amendment. Accordingly, **IT IS HEREBY ORDERED that**:

1. The Court **DECLINES** to adopt the R&R (Docket No. 122); and
2. Defendant Jose Alfredo Penaloza Romero's Motion to Suppress (Docket No. 45) is **DENIED**.

Dated:  December 19, 2019

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge